Opinion of the court delivered by
Judge Whyte.
This was an indictment for murder: the jury found a verdict in. the following words, to. wit: “ We do say that the said ^ Edwin Crawford is giiilty of the murder in manner *61 “ and form as in the bill of indictment aforesaid against “ him is charged, and recommend him to the mercy oijthe chief magistrate of the State of Tennessee, on “ of his former good character.” A new trial was moved for in the circuit court, for misdirection of the court on several points submitted to him during the trial; and for not granting a new trial upon the matter disclosed by the affidavits of the defendant, of Jacob Brasher, a juror, and of William H. Shelton and James M’Bride, jurors also, Brasher stated, that when the jury retired to make up their verdict, he had very strong doubts of the guilt of the accused as to murder, under the law and facts of the case, and so expressed himself to his fellow jurors, and refused to render a verdict of guilty against the defendant: that after the jury had been in their retirement some time, it was proposed that a verdict of guilty of murder should be rendered, and accompanying the same there should be a recommendation of the prisoner to the mercy of the Governor; which recommendation, and the belief of this deponent that it would be effectual., could alone have induced him to have assented to the verdict of guilty which was rendered, as he was not at all satisfied of the guilt of the prisoner as to murder, and had he not believed that the prisoner would be pardoned on application to the Governor he never would have assented to it. He declares that his doubts of the guilt of the prisoner were so strong, and he was so.far from believing that he had committed the crime of murder, that no consideration ever could have induced him to render the verdict which was rendered, but the belief which is above set forth. This deponent further states, that he was ignorant of legal proceedings, and considered that if the prisoner were discharged, his mind would be satisfied and his objects effected.
James M’Bride states it to be his belief, that the verdict of guilty would not have been rendered in this case, but that it was proposed to find a verdict of guilty, and recommend the prisoner to the mercy of the Governor. Deponent further states, that two of the jury, Brasher and New, urged doubts of the guilt of the defendant; and it *62 was suggested that at any rate a verdict might as well be rendered, for that there could be no doubt of a new trial, and it was not worth while to have the jury confined. Also, that the jury were much alarmed at the prospect of not agreeing; and that said Brasher never did agree till the recommendation of mercy was added to the verdict, and the idea of a new trial advanced.
William H. Shelton states, that the said two jurors did not agree to the verdict, but objected till the idea of a new trial was advanced, and the recommendation to mercy was added to the verdict.
On these affidavits of the jurors, the verdict and accompanying recommendation to mercy, two questions arise: 1st. Is the matter contained in them sufficient to authorize the granting a new trial? And, 2dly; does it properly appear, so that the court can take notice of it? I lay the affidavit of the prisoner out of the case on the present occasion, not but that 1 think it is evidence competent to be received, though coming from one under conviction of death, and must be necessarily subject to all the disadvantage of the pressure of such a situation, but because I found my opinion on those of the jurors and verdict only.
In examining the matter contained in the affidavits of the jurors, as to its sufficiency for the granting a new trial, I shall take them as true in all their parts for the present, reserving till hereafter the examination, whether there is reasonable ground of doubt on this point, or not. These affidavits, then, shew, that though there is a legal verdict in form by twelve men, yet that in truth and in fact it is only the verdict of ten men, or at the most the verdict of eleven, according to legal principles, which requires jurors to be governed by the evidence in finding their verdict, and not extraneous circumstances. Brasher’s verdict was rendered, not on his belief of the guilt of the prisoner arising from the law and factsofthe case, but on considerations entirely foreign to them; for he had not only strong doubts of the guilt of the prisoner, but such doubts as would have prevented him from ever rendering a verdict of guilty o.f *63 murder, and no consideration could ever have induced him to the contrary, independent of these circumstances. He assented to the rendering the verdict of guilty of murder againstthe prisoner, notbecause the prisoner was, inhisbe-lief, guilty of murder, but because of his recommendation to the mercy of the Governor, and his belief that that recommendation would be effectual, which would effect his objects, to wit, the discharge of the prisoner, and the satisfaction of his mind.
This makes the verdict of Brasher to be occasioned by misrepresentation and mistake. It does not appear whether this was a wilful misrepresentation or not, on the part of the other jurors: the effect upon Brasher was the same, in point of fact, as if-it had been wilful, and the same in its effects in point of law, as far as regards setting aside the verdict. A contract procured from an individual by mistake and misrepresentation, will be set aside, as in the case of Lansdown vs. Lansdown, in Moseley’s Reports 364, an abstract of which we have in Newland, 432. There a dispute existed between the eldest brother and the younger one, upon the point which of them was entitled to the lands of a deceased brother: they referred the question to a country schoolmaster, who erroneously deci-cided in favor of the youngest brother, upon the notion that lands could not ascend; upon which the eldest executed a conveyance of a moiety, and bonds for quiet-enjoyment. Upon a bill. afterwards to have these deeds set aside, the Lord Chancellor decreed the same accordingly,, as they were obtained by mistake and misreprentation.
Now if the. mistake made by the schoolmaster, in that case, was sufficient to rescind the contract in favor of the party prejudiced, how much more ought such a mistake and misrepresentation to be a sufficient ground for setting aside the act occasioned thereby, to wit, the verdict, where the injury is twofold; to the public justice of the country,and may wrongfully deprive a fellow citizen of his life. The only difference (thé principles are the same in both cases) consists in the greater mischief of the latter, which surely would be a reason, not for abridging. *64 büfc were it necessary, (which it is not,) for extending the . . ¶ principle.
This verdict is radically had, within the principle of Hall vs. Coxe, 1 Strange 642, and ought not to be sup-' ported; that verdict was made by drawing of lots, and notwithstanding it was according to the evidence and the opinion of the judge, it was agreed by the court of Kings Bench, it must be set aside. The reasons are not given in the report, but it evidently results from the case, that it was oh the ground that the finding or determination, was not produced or occasioned by the proper means* the law and evidence, but by circumstances independent of them. A right result will not therefore satisfy the law; it must also be rightfully come at, in order to preserve the due administration of justice, and the purity of trial by jury. The present verdict was not got, it is true, by drawing of lots, but it was got by means equally exceptionable. Several cases might be adduced to the same effect; but the point decided in the above case, it is believed, is acknowledged law, and being an old case decided in the year 1726, is free from the objection of being post-revolutionary. This case it is true does not decide the question, whether this matter can be shewn by the affidavit of the jurors themselves, which I am not here examining, for even in the strongest cases on the side of the question that such affidavits are not receivable, the principle is admitted, that if the facts shew that if the verdict is obtained by other means than the proper means, it will be set aside. Thus in C. vs. Swan, 4 Bin. 155, where the affidavits of the jury were reject-* ed, Yeates, Justice, says, that the finding of the jury should be the result of their impartial and unprejudiced judgment, according to their evidence, and that verdicts will be set aside obtained by throwing up cross and pile, casting lots, &c., for says he, every suitor has an undoubted right to have his controversy terminated by a definite measure of justice; so say I, and that in the present case, this prisoner had not only the constitutional and undoubted right of having the impartial and unprejudiced *65 judgment of twelve jurors of his guilt, according to the evidence, but also a right to the free exercise of that judgment, uninfluenced by the delusive notions, either a new trial, or executive clemency. Upon these affidavits this prisoner has been deprived of this right, and is entitled to redress by a new trial; provided, we can legally notice the aífídavits, and they possess our credence. The second question is, whether jurors shall be permitted by their own affidavits to prove matter to set aside verdicts they have rendered. This point hath been much discussed in the courts of the different States; and also in England: there have many decisions both ways; but it seems that the result of a majority of the modern cases, is opposed to the receiving of them. From the manner in which these decisionsare reported, it appears pretty plainly that a struggle existed between the two sides of the question, even in the minds of the Judges who made them, and that the coincidence of opinion which has formed the majority, has not been founded on the unity of their reasons. Amidst this conflicting variety of decisions, as well as of reasons, and there being no solemn decision of this court upon the point, I will take the liberty of stating my own opinion, and the opinion of the court, upon the subject.
It seems that by the common law before the revolution, the affidavits of jurors could be received, and this was the constant practice before the time of Lord Mansfield, except in two cases. In 1767, Lord Mansfield permitted it to be shewn by the affidavit of jurors, that a wrong verdict was delivered by the foreman. He says, “ the court had no doubt about the fact of this mistake, from the affidavit of eight of the jurymen, confirmed, as they held it in effect to be, by the foreman declining to make any affidavit at all.” Bur. 324. His Lordship in the year 1770, changed the practice, and refused to admit the affidavit of a juryman to shew that he had given his verdict under a mistake. Bur. 2687. In the year 1785, we find him adhering to the last decision, in refusing the affidavits of jurors to set aside a verdict. The *66 fact that they offered to prove was, that they tossed up,, and the plaintiff won. 1 Term Rep. 11. The court says? they must derive their knowledge from other sources. Three years afterwards, in 1788, during his Lordship’s time, but he was not present in court, we find the court of King’s Bench refusing to receive an affidavit made by all the jurymen, to shew a mistake in entering up their verdict. The court said, they laid no stress upon its being made by all the jury: if it could be made by all, upon the same principle it could be made by some. 2 Term, 282. The reason assigned by the court is, such a practice would be productive of infinite mischief.
The latest English case on the subject is 4 Bos. and Pul. in the C. P. where the court refused to set aside the verdict upon the affidavit of a juryman that it was decided by lot. The Chief J. Mansfield observed, the authorities on the subject were very contradictory, and he wished to consider the case before any opinion was delivered. His Lordship observed, it was singular to refuse to set aside the verdict on the evidence of the jurors, when that evidence was before the court; though perhaps the best way would have been to refuse to entertain any notice of this kind: Cur ad-imlt. He afterwards delivered the opinion of the court, that having conversed with the other Judges, all were of opinion the affidavit of a juryman could not be received; and said it was singular indeed, that almost the only evidence the case admits, should be shut out: but considering the arts that might be used if a contrary rule were to prevail, we think it necessary to exclude such evidence.
Such has been the course of decision in England, and the reasons given in the reports of the later decisions which have changed the law there. Viewing them as evidences of the common law, the time of the change must not be overlooked, as those prior to the revolution can only be considered as such evidence in our courts. Proceeding upon this rule, the affidavits of jurors are legally receivable here, to exhibit to the court matter for setting aside the verdict they themselves have rendered. *67 The observation of the Chief Justice of the C. P. in the case last mentioned in Bos. and Pul. which settled the point in England, is deservedly entitled to great weight. He says, “it was singular indeed that the only evidence the case admits should be shut out;” and yet that decision excluded it. It might be added, that it is also the best evidence the case admits of; the jury from their recluse and retired situation are not subject to inspection, nor their proceedings to observation, at least of that kind to admit of a correct account to be given of them by an indifferent person. They themselves are alone adequate to a development of their own conduct and proceedings. In I Term Rep. Vaux vs. Delavel, Lord Mansfield says, the court must derive their knowledge from other sources. What source? The law contemplates their seclusion; the only alternative is the ignominious eavesdropper. Surely the jurors who fill this important office are not to be put on a level with those who by their own conduct have debased themselves. But it is said in the argument, the receiving the affidavit of jurors is against public policy; it would expose them to the being tampered with, the effect of which would be numerous applications to set aside verdicts. The like objection applies to every witness — the possibility of being practised upon. But this does not produce the effect: the danger is imaginary; jurois in general are above attacks of this kind; and for the honor of human nature, I think there are few that would be found capable of making the attempt. Again, it is said, public policy forbids that a man should attempt to invalidate what he himself has done; a juror' to defeat, to contradict, to impeach the verdict he has given. We have seen that this was not the public policy of the period of our law before the time of Lord Mansfield, nor of his Lordship when he first sat in the court of King’s Bench: the doctrine was advanced by him, however, as early as the year 1765, in the case of a paper signed by the jury, intimating a disapprobation of their verdict. In the year 1770, he extended it to the affidavit of a juror to shew a mistake in his verdict: and in the year 1784, the rule was *68 further extended to prevent a person coming forward as a witness to impeach a security he had given, though not interested in the event of the suit.
Now in all these, the principle is the same, that a man shall not be heard to declare his defect of the moral principle, or to avow his own moral turpitude, whether it consists in impeaching a security he has given, or setting aside a verdict he has rendered, or whether it is to show that a contract, to which he was a party was fraudulent, or any other transaction in which he was concerned, was effected by fraud, or to say that he was guilty of a crime as principal, or as an accomplice, or guilty of a misdemeanor: and my opinion is, that in-all these cases, the party offering himself as a witness, is not rendered incompetent by his own moral turpitude, whether it is deduced from the participation of the agency in, or whether it is deduced from other and different causes, so that he has the use of his reason and such religious belief as to feel the obligation of an oath, and has not been convicted of any infamous crime, and is not infffienced by interest. See Phillips’ Ev. 333. And in England at this day, a man may come forward as a witness in all the above cases, except as a juror to impeach his verdict, which we have seen does not constitute the rule here; and which is not the better opinion in my humble judgment, as it is in opposition to all the other analogies of law.
From this view of the law, these, affidavits were properly receivable by the court, and are competent evidence on the point to which they were adduced. The remaining point is, what credit they are entitled to. And here I must premise, that all.evidence is subject to be weighed by the tribunal to which it is offered, if it is authorized to examine it, and to act.upon it, whether it be a jurj or a court. It does not follow because a matter is sworn to by affidavit, that therefore it is to he taken as true, either in whole or in part; its evidence is to be examined,and the court is carefully to exercise its judgment on the matter. No case requires a more cautious and deliberate exercise of the credit-giving power, than that on which we *69 are now called to decide, namely, the affidavit of jurors to show the ground on which their verdict was given; and this for the purpose of setting this verdict aside. A verdict under such circumstances is to he approached with great caution and great circumspection, but it is not altogether intangible, and beyond the reach of the redressing power of the court; if it were, I for one would think it a defect in the administration of the justice of the country, and a defect in the policy of the law. It is not to be forgot on this part of the case, that this verdict naturally and necessarily points to something not common, because it is itself uncommon; it is perfectly sui generis; and no instance, as it is said at the bar, occurs in our courts of the likeflrind. When we open the affidavits of the jurors the matter is explained and understood; we see it well and satisfactorily accounted for; and when thus accounted for by the affidavits, it in its turn reflects back strength upon them, and the whole taken in connexion forms a case not to be resisted, if the jurors are respectable. On this point I must suppose the circuit judge was well informed. Brasher is not questioned. Shelton and M’Bride are put on the same footing, and spoken most respectfully of.
From this view of the case, it is the opinion of this court, that the circuit court erred in not granting a new trial upon the matter disclosed by the verdict and affidavits of the jurors.
Judgment reversed, and new trial granted.