**STATE of Tennessee, Appellee,**

v.

**Dennis Michael FUINO and Daryl Lee Madden, Appellants.**

Court of Criminal Appeals of Tennessee, At Nashville.

Aug. 27, 1980.

Permission to Appeal Denied by Supreme Court Dec. 1, 1980.

William M. Leech, Jr., Atty. Gen., John C. Zimmermann, Asst. Atty. Gen., Victor S. Johnson, III, Asst. Dist. Atty. Gen., Nashville, for appellee.

Sam E. Wallace, Nashville, for Madden.

Joe P. Binkley, Nashville, for Fuino.

## OPINION

WALKER, Presiding Judge.

In two counts the Davidson County grand jury indicted the appellants, Dennis Michael Fuino and Daryl Lee Madden, for first degree murder of Robert C. Watson and for assault with intent to rob the said Watson. In the first phase of the bifurcated trial, the petit jury found the appellants guilty as charged of both offenses and fixed their punishment under the second count at not less than five nor than seven years' imprisonment. In the second stage of the proceeding, the jury fixed their punishment for first degree murder at life imprisonment. The trial judge polled the jury at each stage of the bifurcated trial.

In their sole issue for review on this appeal, the appellants insist that the trial judge erred in overruling their motion for a new trial based on irregularities in the jury's deliberations.

Although the appellants do not challenge the sufficiency of the convicting evidence, a brief review of the facts is necessary in order to understand the nature of the appellants' allegations.

At about 6:15 a. m., February 24, 1978, the appellants and one Steve Troupe went

to the home of Colonel Robert C. (Charles) Watson in Nashville. One of the men knocked on the door and falsely told Colonel Watson that they had had car trouble and needed to use the telephone. After gaining entrance to the house under this pretense, Troupe fatally shot Colonel Watson in the back with a .38 caliber revolver.

Paula Watson, the victim's daughter, saw two men in the kitchen and she went into her mother's bedroom. Troupe broke into that locked room, shot Mrs. Watson and struggled with her on the bed. He also pointed his pistol at the daughter.

When Troupe shot Colonel Watson, the appellants thought he had gone berserk. They pulled him from Mrs. Watson, then shot and stabbed him several times, rescuing Mrs. Watson and causing Troupe's death.

Fuino fled from the scene but Madden remained, calling the police and an ambulance. He remained there to aid the victims of the attack.

The daughter testified that, after shooting Troupe, the appellant Fuino remarked that he was not leaving until he got the money and stuff. Mrs. Watson testified that she knew none of the three men and that the appellant Madden told her that they came to rob, not to kill.

Testifying in their own defense, both appellants admitted going armed to the house but claimed that they were there merely to assist Troupe in collecting some money owed him for the sale of jewelry. They said that they remained on the porch at first and entered the house only when they heard shots from Troupe's pistol. They then went in and saw Troupe firing at Colonel Watson and thought that Troupe had gone crazy. They killed Troupe to keep him from further harming the two women. They denied going to the Watson home to rob or kill and denied making any statements that they were there to rob.

Although Mrs. Watson denied knowing Troupe, a paper with her name and phone number was found in his wallet. One witness testified that he had introduced Troupe to Mrs. Watson and had once taken him to the Watson home. Another witness stated that she was with Troupe at a time when he sold Mrs. Watson some jewelry in a parking lot. Troupe was known to this witness as one dealing in stolen merchandise. In rebuttal Mrs. Watson admitted buying some jewelry in a parking lot but denied that the other party was Troupe.

With their motions for a new trial, the appellants submitted the affidavits of six of the jurors, including that the foreman, to the effect that it was not the jury's intention that of the appellants serve life sentences and absent their misunderstanding of the instructions and their ignorance and misconception of the law, the jury would never have convicted the appellants of first degree murder.

In the first phase of the trial, the court instructed the jury on first degree murder generally in accord with T.P.I.–Crim. 20.01 and T.P.I.–Crim. 20.02 with exception of the provision telling the jury that if it found the appellants guilty of this offense it would be their duty after a separate sentencing hearing to determine whether the appellants would be sentenced to death or to life imprisonment, but it would not consider punishment at that time. In his memorandum and order overruling the motion for a new trial, the trial judge says that, with the consent of counsel for both sides, he did not advise the jury of these sentencing procedures in the event that it found the appellants guilty of first degree murder. This failure to so inform the jury resulted in the problems presented in this case.

After instructing the jury on first degree murder without explaining that, if the jury so found, then it would be their duty to fix punishment in a separate sentencing hearing, the court instructed the jury on second degree murder, voluntary manslaughter, involuntary manslaughter, assault with intent to commit robbery with a deadly weapon,

assault with intent to commit simple robbery, attempt to commit a felony, and simple assault. With respect to all of these offenses, the court instructed the jury on the range of punishment and that it would fix the punishment on conviction.

The instruction with regard to a guilty verdict of first degree murder was:

"If you find from the proof beyond a reasonable doubt that the defendants or either of them are guilty of murder in the first degree, you will so report and your verdict in that event shall be 'We, the jury, find the defendants or either of them guilty of murder in the first degree.' "

Almost as soon as the jury had been discharged, the foreman and several members were seeking to explain that this was not their verdict as to first degree murder.

Among other things, the foreman, in his affidavit, stated that he understood that, if the jury found the appellants guilty of first degree murder, then the trial judge would set punishment and that he could sentence them to anything from life imprisonment to a suspended sentence. By fixing five to seven years' punishment under the second count, the foreman says that the jury indicated to the court that they thought this was the proper punishment for both offenses.

By her affidavit, Juror Sweatt said that the foreman convinced the jury that the trial judge would set aside the conviction for first degree murder and, since these were the appellants' first convictions, the trial judge would more than likely dismiss the murder charge. The foreman further advised the jury that the trial judge would set the punishment.

Juror Krantz by affidavit reported that had the punishment been set out on the first degree murder charge the jury would not have returned this verdict. It is apparent from the affidavits of the jurors that they accepted the foreman's understanding and erroneous representation of the law.

■ Our Tennessee law in regard to the jury's ability to impeach its own verdict is summarized in *Montgomery v. State*, 556 S.W.2d 559 (Tenn.Cr.App. 1977). The court quoted with approval Federal Rules of Evidence, Rule 606(b), as representing Tennessee law. By our rule a jury cannot impeach its verdict except with respect to "extraneous prejudicial information" or "outside influence." Recognizing this rule, the trial judge held that the affidavits contained no information under either of the two exceptions.

■ On appeal the state contends that the affidavits merely complain that the jury misunderstood the trial judge's instructions and that such a misunderstanding never vitiates a verdict. We agree that a mere misunderstanding of instructions would not come within either of the above exceptions. *Lee v. State*, 121 Tenn. 521, 116 S.W. 881 (1908); *Batchelor v. State*, 213 Tenn. 649, 378 S.W.2d 751 (1964).

We also agree that the affidavits contain numerous complaints that the jury could not comprehend the instructions. The affidavits, however, also contain proof of extraneous prejudicial information.

In *Crawford v. State*, 10 Tenn. 60 (1821), the jury returned a verdict finding Crawford guilty of murder with a recommendation of a pardon. The affidavit of a juror was submitted stating that he would not have agreed to the verdict had not other members of the jury convinced him that the Governor always pardoned in accordance with the jury's recommendation. Stating that the verdict was based on extraneous circumstances and that the vote of the individual juror was a product of misrepresentation and mistake, the Supreme Court reversed and granted a new trial. For further explanation of *Crawford*, see *Booby v. State*, 12 Tenn. 111 (1833). Accord, *Cochran v. State*, 26 Tenn. 544 (1847).

■ In this case we find that the foreman's statements regarding the appellants' punishment if convicted of first degree murder constituted extraneous prejudicial information. The jurors were induced to

agree by misrepresentation and mistake. Moreover, since the court did not instruct with respect to this matter, we cannot say that the jury simply misunderstood the charge.

We affirm the conviction for assault with intent to commit robbery but reverse that for first degree murder and remand for a new trial on that count. On retrial the court will instruct the jury in accordance with T.P.I.–Crim. 20.01 and T.P.I.–Crim. 20.02 or similar language as to their duty to fix punishment after a separate sentencing hearing in the event of a verdict of first degree murder.

O'BRIEN and CORNELIUS, JJ., concur.

## OPINION ON PETITION TO REHEAR

The appellant filed a petition to rehear on September 8, 1980, and an amendment to the petition on September 18, 1980. Our review of the petition leads us to the conclusion that a rehearing is inappropriate. Rule 39, Tennessee Rules of Appellate Procedure. The petition is denied.