[No. 1058-3.  Division Three.  April 7, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. RONALD G. FORSYTH, *Appellant*.

134

Wesley G. Hohlbein, for appellant.

Donald C. Brockett, Prosecuting Attorney, and Fred J. Caruso, Deputy, for respondent.

GREEN, J.—Defendant appeals from a conviction of carnal knowledge with a 14-year-old girl.

Error is assigned to the trial court's denial of a motion for new trial, based upon (1) the bailiff's communication with a juror; (2) misconduct of a juror due to illness; and (3) the failure to exclude the in-court identification of defendant by the complaining witness.

Trial commenced on October 2, 1973. The jury was not sequestered. On Friday, October 5, a juror began feeling ill. On Monday, October 8, a court holiday, this juror was hospitalized. On Tuesday, October 9, the court, learning of the juror's hospitalization, continued the trial and instructed its bailiff to communicate with the juror to determine her state of recovery and the date she could return for resumption of the trial. This juror relates the communication in her affidavit:

> When the bailiff called me he asked me how long I was going to be hospitalized and I advised him that my length of stay had not as yet been determined. On the following day the bailiff called again and I advised him after some discussion that my Doctor's preference was that I not return to court before Monday, October 15 at the earliest. He told me that he would talk to Judge Smith about these circumstances and would call me back. Later that day the bailiff called again and he suggested that he might have something that would change my doctor's mind. He said that we could have a regular court day on Friday with plenty of rest periods for me and that the case would be completed on Monday. He said that if the case takes too long it would have to be retried, and that it wouldn't be good for this girl (complaining witness) to

have to go through this again. At that point I asked the bailiff how long a period of time would have to elapse before the court would declare a mistrial. I felt that I never did get an answer to that question and was confused as to the status of things. I told the bailiff to call me back on the following day and that I would try to get an answer from my Doctor about returning to jury duty on Friday. On Thursday, October 11, 1973, the bailiff called me again at the hospital and I told him that my Physician had ordered me not to return to jury duty until at least Monday. . . .

I was discharged from the hospital on Friday and was directed by my Doctor to get lots of rest and continue my medication. When I asked him about returning to jury duty on Monday he reluctantly agreed to allow me to do so.

When trial resumed on Monday, October 15, the court greeted the jurors and inquired of the previously ill juror, "Are you feeling pretty good this morning?" The juror answered, "Yes" and the court directed counsel to proceed. At 2:30 p.m. that day, the jurors were excused until 9:30 a.m. the following day, the court stating:

It had been my hope to finish the case today, Ladies and Gentlemen, but we have a couple of witness problems and things that require time. I think that we will go over until tomorrow morning. We also have the problem of getting the instructions ready, which will take a half an hour or an hour, and the attorneys will want a couple of hours of argument, and I am afraid the case would get to you about six o'clock, *and I know that Mrs. Cesaratto is just out of the hospital, and I don't want to have any problem with her health.* I think the best thing would be to continue this case until tomorrow morning, and we should be able to complete it by noon, and you can have most of the afternoon to deliberate on the matter. We will adjourn, and I will see the attorneys regarding the instructions.

Trial resumed the next morning and at 12:25 p.m. that afternoon, the jury retired and after 3 hours of deliberation returned a verdict of guilty.

First, defendant contends that the following remark by the bailiff to the juror was a comment on the evidence:

[I]f the case takes too long it would have to be retried, and that it wouldn't be good for this girl (complaining witness) to have to go through this again.

This contention is premised on the argument that the statement was an indication that the court believed the complaining witness was credible and deserved sympathy. We disagree.

■ Article 4, section 16 of the Washington Constitution prohibits a judge from commenting upon the evidence. It has been said that a bailiff is in a sense the "alter ego" of the judge and as a consequence the bailiff's remarks may fall within the constitutional prohibition and in proper circumstances justify the granting of a new trial. *O'Brien v. Seattle*, 52 Wn.2d 543, 548, 327 P.2d 433 (1958). The purpose of this constitutional prohibition is to prevent a judge, or as in this case, his "alter ego"—bailiff, from conveying the court's opinion as to the evidence or the credibility of a witness. In *State v. Jacobsen*, 78 Wn.2d 491, 495, 477 P.2d 1 (1970), the court further observed:

In keeping with this purpose, we have consistently held that this constitutional prohibition forbids only those words or actions which have the effect of conveying to the jury a personal opinion of the trial judge regarding the credibility, weight or sufficiency of some evidence introduced at the trial. . . .

In determining whether words or actions amount to a comment on the evidence, we look to the facts and circumstances of the case. It is, of course, possible that the personal opinion of a trial judge may be conveyed both directly and by implication.

(Citations omitted.)

We do not agree with defendant's contention that the bailiff's remark inferred that the trial judge considered the complaining witness credible. The remark, while perhaps better left unsaid, was merely a statement of an obvious fact. As the trial judge in his memorandum opinion observed:

[T]here was no legitimate controversy over the fact that she had been sexually molested and that the experience was deeply disturbing.

It seems clear that the bailiff's remark, by any reasonable construction, does not convey the court's belief as to the credibility of the complaining witness; it merely conveys the obvious fact that it would not be good for this young girl to be put through the distasteful task of redescribing the events surrounding her molestation. Moreover, the affidavit of this juror does not indicate in any way that she so construed the bailiff's communication.

Likewise, defendant's contention that the sympathy of this juror was aroused in favor of the complaining witness does not stand analysis. The evidence is uncontroverted that the 14-year-old complaining witness was sexually molested. Consequently, counsel for both sides displayed an understanding concern in deference to her age and the nature of the crime. At most, the bailiff's statement conveyed a similar concern.

We do not find that the bailiff's communication amounts to a comment on the evidence, nor are we able to find any evidence in this record that the defendant was prejudiced thereby. *State v. Smith*, 43 Wn.2d 307, 261 P.2d 109 (1953); *State v. Rose*, 43 Wn.2d 553, 262 P.2d 194 (1953); *State v. Whalon*, 1 Wn. App. 785, 464 P.2d 730 (1970); *Snyder v. Sotta*, 3 Wn. App. 190, 473 P.2d 213 (1970); RCW 10.67.010.

Secondly, defendant contends his motion for new trial should have been granted by reason of the juror's misconduct in continuing as a juror when her illness rendered her incapable of fulfilling her functions as a juror. We disagree.

The record is clear that when the juror returned for trial on the morning of October 15, she advised the court in response to its inquiry that she was feeling pretty good. The jury was excused at 2:30 p.m. that day and the trial was resumed at 9:30 a.m. the following morning and the verdict was returned during the late afternoon that day. At no time did she advise the court that her health in any way interfered with her performance as a juror. However, in her affidavitt she states:

> On October 5, 1973, which was a Friday I was in such pain that it was difficult to concentrate on the taking of

testimony. I can't state for certain that I received all the testimony on that date.

. . .

. . . Monday when I returned to take further testimony I was weak and tired, and on Tuesday the following day I was in a similar condition and also had a severe headache.

I was the last of the jurors to hold out for acquittal. While we were deliberating the jury room was extremely smokey which wasn't helping my headache and I was even more weak and tired than before. I had my doctor's advice to take it easy in mind and was the subject of intense pressure from other jurors to change my vote. Had I not been subjected to that kind of pressure and had I been in good physical condition I would have held out indefinitely for a vote of acquittal.

Affidavits of other jurors conflict with this juror's affidavit, indicating a total lack of pressure.

■ A juror in an affidavit tending to impeach the verdict may only testify to matters which do not inhere in his verdict. That is, the trial court may consider statements of *fact* set forth in the affidavit, but may not consider a juror's statement of the *effect* such facts had upon the verdict. *O'Brien v. Seattle,* 52 Wn.2d 543, 327 P.2d 433 (1958); *Gardner v. Malone,* 60 Wn.2d 836, 376 P.2d 651 (1962); *Coleman v. George,* 62 Wn.2d 840, 384 P.2d 871 (1963); *Cox v. Charles Wright Academy, Inc.,* 70 Wn.2d 173, 422 P.2d 515 (1967). Thus, the effect of the juror's illness and the claimed pressure by other jurors inheres in the verdict and may not be used to impeach that verdict.

In *Gardner v. Malone, supra* at page 841, the court, discussing matters which inhere in a verdict, said:

The crux of the problem is whether that to which the juror testifies . . . in support of a motion for a new trial, inheres in the verdict. If it does, it may not be considered; if it does not, it may be considered by the court . . . One test is whether the facts alleged are linked to the juror's motive, intent, or belief, or describe their effect upon him; if so, the statements cannot be considered for they inhere in the verdict and impeach it. If they do not, it then becomes a matter of law for the

trial court to decide the effect the proved misconduct could have had upon the jury. Another test is whether that to which the juror testifies can be rebutted by other testimony without probing a juror's mental processes.

The distinction between motive and irregularities may sometimes be shadowy and difficult to perceive, but

". . . it is today universally agreed that on a motion to set aside a verdict and grant a new trial the verdict cannot be affected, either favorably or unfavorably, by the circumstances:

"that one or more jurors *misunderstood* the judge's *instruction*;

". . .

"or *assented* because of *weariness* or illness or importunities;

(Footnote omitted.) Some of the rationale for excluding consideration of those matters which tend to affect the juror's state of mind and hence his verdict was earlier expressed in *State v. Gay*, 82 Wash. 423, 439, 144 P. 711 (1914):

If the juryman making the affidavit actually believed that the evidence did not justify a verdict of guilty, it was a gross wrong on his part, for any consideration of personal convenience, or any consideration of convenience to the defendant, to compromise with the other members of the jury and agree on a verdict of guilty. The only verdict he could conscientiously render in keeping with his oath was one of not guilty. He therefore violated his oath, either in returning the verdict or in making the affidavit after the return of the verdict. When he so violated it cannot, of course, be ascertained without an inquiry into the privacy of the jury's deliberations. But public policy forbids such inquiries. To permit it would encourage tampering with jurymen after their discharge, would furnish to corrupt litigants a means of destroying the effect of a verdict contrary to their interests, and would weaken the public regard for this ancient method of ascertaining the truth of disputed allegations of fact. But few verdicts are reached in which some juryman does not yield in some degree his opinions and convictions to the opinions and convictions of others. And when he does so, even in criminal cases, it is to the

interest of the public that he be not permitted thereafter to gainsay his act.

Since the juror denied her illness to the trial judge, the effect of such illness, if any, inheres in the verdict. The trial court properly denied the motion for new trial on the ground of juror misconduct.

█ Finally, defendant contends the complaining witness' in-court identification of the defendant was tainted by impermissively suggestive out-of-court procedures. Specifically, defendant takes exception to the photographic identification procedure and alleges that just prior to the complaining witness' testimony the prosecutor pointed out defendant in the hallway and asked, "Are you sure he is the one?" The alleged occurrence in the hallway is supported by the affidavit of the attorney for defendant, but was denied by the complaining witness on cross-examination. As to any effect which the photographic identification may have had upon the in-court identification, we agree with the trial court's determination that:

> So far as the court's ruling in permitting the in-court identification is concerned, it still seems correct. . . . [The complaining witness] was interviewed beforehand and seemed to have a clear recollection of what the man involved looked like. A detailed description had been given to police before the photographs were viewed. She spent an hour with him in his automobile and it seemed that it was this memory, not a photograph, which was shown to her on two occasions which was left imprinted in her memory.

Based upon the totality of the circumstances surrounding the complaining witness' identification of the defendant, the trial court properly concluded that the identification was based upon the witness' original encounter with defendant, rather than the photographic identification. *State v. Kearney,* 75 Wn.2d 168, 171, 449 P.2d 400 (1969); *State v. Coburne,* 10 Wn. App. 298, 518 P.2d 747 (1973); *State v. Net-*

*tles,* 6 Wn. App. 257, 492 P.2d 567 (1971), *aff'd,* 81 Wn.2d 205, 500 P.2d 752 (1972).

Affirmed.

McINTURFF, C.J., and MUNSON, J., concur.