STATE OF WEST VIRGINIA

*v.*

DAVID L. SCOTCHEL

(No. 14726)

Decided December 15, 1981.

*Daniel A. Oliver* for plaintiff-in-error.

*Chauncey H. Browning,* Attorney General, *Richard S. Glaser, Jr., and Janet Frye Steele,* Assistant Attorneys General, for defendant-in-error.

MILLER, JUSTICE:

The defendant, David L. Scotchel, appeals his conviction of assault and battery primarily asserting that the trial court erred when it refused to overturn the verdict of the jury based on an affidavit of one of the jurors submitted by defense counsel during post-trial motions. The affidavit stated that the juror had voted for conviction because another juror represented that the maximum punishment for assault and battery was only a fine. The juror additionally represented that she had been verbally abused by her fellow jurors. Furthermore, the juror stated she felt pressured to vote for conviction because of concern for a fellow juror who appeared to her to be ill during the deliberations. We conclude the trial court was correct in refusing to impeach the jury verdict on these grounds.

The early English common law pronouncement that a jury verdict could never be impeached through testimony or affidavit by one of the jurors[1] is not absolute in this

---

[1] *Vaise v. Delaval,* 1 Term Rep. 11, 99 Eng. Rep. 944 (1785). This rule is not now absolute in England. *See,* 26 *Halsbury's Laws of England* § 647 (1979):

"However, the affidavits of jurors or bystanders may be received as to what passed in open court on the bringing in of a verdict, of the circumstances under which a juror went into the box and of his state of sobriety when in the jury box or jury room; and a juror is entitled to be heard in his own defence." (Footnotes omitted)

country. Whether a jury verdict may be impeached by the affidavit of a juror is usually determined in light of the nature of the grounds urged for impeachment. Most courts recognized that a jury verdict may not ordinarily be impeached based on matters that occur during the jury's deliberative process which matters relate to the manner or means the jury uses to arrive at its verdict. This principle is often cast in terms of prohibiting impeachment of a verdict on matters which inhere in the verdict and is summarized in 76 Am.Jur.2d *Trial* § 1219 (1975):

> "While matters of impeachment extrinsic to the verdict may, according to the view of many courts, be shown by the testimony of jurors, it is a long-established and generally accepted doctrine, except where modified by statute, that testimony or affidavits of jurors impeaching a verdict rendered by them will not be received where the facts sought to be shown are such as inhere in the verdict."[2] (Footnotes omitted)

*See also, United States v. Wilson,* 534 F.2d 375 (D.C. Cir. 1976); *Government of the Virgin Islands v. Gereau,* 523 F.2d 140 (3rd Cir. 1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976); *Hill v. State,* 53 Ala. App. 23, 296 So.2d 921 (1974); *Smith v. State,* 330 So.2d 59 (Fla. App. 1976); *Ingram v. State,* 204 Kan. 836, 465 P.2d 925 (1970); *State v. Credeur,* 328 So.2d 59 (La. 1976); *People v. Riemersma,* 104 Mich. App. 773, 306 N.W.2d 340 (1981); *State v.*

---

[2] Rule 606(b), of the Federal Rules of Evidence, summarizes the proposition in this fashion:

"(b) *Inquiry into validity of verdict or indictment.* Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter aboutwhich he would be precluded from testifying be received for these purposes."

*Hoskins,* 292 Minn. 111, 193 N.W.2d 802 (1972); *Munoz v. State,* 524 S.W.2d 710 (Tex. Cr. App. 1975); *State v. Barrett,* 132 Vt. 369, 320 A.2d 621 (1974); *State v. Forsyth,* 13 Wash. App. 133, 533 P.2d 847 (1975); Annot., 32 A.L.R.3d 1356 (1970).

The reason traditionally advanced to preclude impeachment of the jury verdict based on what occurred during the jury's deliberations is primarily grounded on public policy protecting the privacy of the jurors. This policy prevents both litigants and the public from being able to gain access to the jury's deliberative process. Inherent in this proposition is the recognition that ensuring the privacy of the jury's deliberations will promote a full, frank and free discussion of all the issues submitted to the jury. It is also recognized that the very nature of the deliberative process, which requires the jurors to arrive at a unanimous verdict, must of necessity require accommodation of individual views. This process of accommodation should not be utilized as a means to attack the general verdict. The rule against impeachment of the verdict also serves to prevent litigants from attempting to influence or tamper with individual jurors after the verdict has been rendered. There is also recognition that limiting impeachment promotes finality of jury verdicts. *McDonald v. Pless,* 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300, (1915); *Rogers v. Meeks,* 385 F.Supp. 593 (W.D. Ark. 1974); *West v. State,* 409 P.2d 847 (Alaska 1966); *State v. Callender,* 297 N.W.2d 744 (Minn. 1980); *People v. DeLucia,* 20 N.Y.2d 275, 282 N.Y.S.2d 526, 229 N.E.2d 211 (1967); *Roberts v. Kettelle,* 116 R.I. 283, 356 A.2d 207 (1976); *State v. Barrett,* 132 Vt. 369, 320 A.2d 621 (1974).

A majority of courts recognize that a jury verdict may be impeached for matters of misconduct extrinsic to the jury's deliberative process. This point is summarized in 76 Am.Jur.2d *Trial* § 1223 (1975):[3]

---

[3] The rules on impeachment of a jury verdict have been generally applied to both civil and criminal cases. *Josephson v. Meyers,* 180 Conn. 302, 429 A.2d 877 (1980); *Williams v. State,* 204 Md. 55, 102 A.2d 714 (1954); *State v. Palmigiano,* 115 R.I. 166, 341 A.2d 742 (1975).

"The rule that the testimony of jurors will not be received to impeach their verdict is subject in many, but apparently not all, jurisdictions to a recognized exception that affidavits of jurors may be received to show matters occurring during the trial not essentially inhering in the verdict, that is, not falling within or pertaining to the legitimate issues in the case." (Footnotes omitted)

Included in this exception is the impeachment of the verdict if one or more of the jurors who sat in the case was initially biased or prejudiced against a party. Ordinarily, before this type of impeachment is permitted, it must be shown that due diligence was exercised by the parties during voir dire examination to develop possible bias, prejudice or disqualification on the part of the jury panel. *Kollert v. Cundiff*, 50 Cal.2d 768, 329 P.2d 897 (1958); *Grist v. Upjohn Company*, 16 Mich. App. 452, 168 N.W.2d 389 (1969); *Isbell v. State*, 626 P.2d 1274 (Nev. 1981); *Little v. State*, 625 P.2d 572 (Nev. 1980); *McNally v. Walkowski*, 85 Nev. 696, 462 P.2d 1016 (1969); *Smith v. Ernst Hardware Company*, 61 Wash.2d 75, 377 P.2d 258 (1962); *State v. Dean*, 134 W. Va. 257, 58 S.E.2d 860 (1950); 76 Am.Jur.2d *Trial* § 1228 (1975); *cf. Shouse v. State*, 231 Ga. 716, 203 S.E.2d 537 (1974); *Hutchinson v. Fort Des Moines Community Services, Incorporated*, 252 Iowa 536, 107 N.W.2d 567 (1961); *City of Seattle v. Jackson*, 70 Wash.2d 733, 425 P.2d 385 (1967). Although some courts have declined to permit impeachment of a jury verdict on this basis, often this is done because the bias or prejudice was not clearly shown or was not thought to have had a significant impact on the jury verdict. *See generally*, Annot., 48 A.L.R.2d 971 (1956).

Our prior cases on the subject do not fit into a neat pattern. They do not distinguish between juror miscon-

However, in criminal trials, a defendant has a constitutional right to confront the witnesses against him. Affidavits of jurors have been used to impeach the verdict of the jury where a third party has supplied the jury with facts that are not in evidence bearing on the defendant's guilt. *E.g., Parker v. Gladden*, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420, (1966); *Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424, (1965); Annot., 58 A.L.R.2d 556 (1958); 3 *ABA Standards for Criminal Justice* § 15-4.7(c)i (1980).

duct extrinsic to the jury's deliberative process and misconduct that arises during the deliberative process. For example, in *Pickens v. Coal River Boom & Timber Co.*, 58 W. Va. 11, 50 S.E. 872 (1905), several jurors' affidavits alleged that during a trial recess some jurors were given liquor by the plaintiff. Counter affidavits were supplied from other jurors denying the allegation. The general rule that the jury verdict could not ordinarily be impeached was acknowledged:

> "In West Virginia this rule has been often followed. Vanmeter v. Kitzmiller, 5 W. Va. 380; Reynolds v. Tompkins, 23 W. Va. 229; State v. Cobbs, 40 W. Va. 718, 22 S. E. 310; Chesapeake & O. R. Co. v. Patton, 9 W. Va. 648; Bartlett v. Patton, 33 W. Va. 71, 10 S. E. 21, 5 L. R. A. 523, Graham v. Citizens' Bank, 45 W. Va. 701, 32 S. E. 245. In Probst v. Braeunlich, 24 W. Va. 356, we find the rule, 'It is settled in this state, as a general rule, with but few exceptions, if any, that the testimony of jurors will not be received to impeach their verdict.' In State v. Cartright, 20 W. Va. 32, it is held that evidence of jurors should be received only to support a verdict." *Id.* at 20, 50 S.E. at 876.

The Court went on to state that: "Where eating and drinking are furnished by the prevailing party, it sets aside the verdict." 58 W. Va. at 20, 50 S.E. at 876. The verdict was not permitted to be impeached, however, on the basis that the defendant had failed to carry the burden of proof on the misconduct issue. Factually, it is apparent the misconduct in *Pickens* was extrinsic to the jury's deliberative process.

Another approach to the subject is illustrated by *State v. Johnson*, 111 W. Va. 653, 164 S.E. 31 (1932), where the claim was made in a post-trial motion that a sequestered jury had received improper communications by way of having a radio in one of the hotel rooms that the jurors occupied. In *Johnson*, we did not address the issue in terms of an impeachment of the jury verdict but rather

whether the misconduct prejudiced the defendant.[4] Again, it should be noted that *Johnson* involved misconduct extrinsic to the jury's deliberative process.

In *Miller v. Blue Ridge Transp. Co.*, 123 W. Va. 428, 15 S.E.2d 400 (1941), the defendant sought to impeach the jury verdict on the ground that it was a "quotient verdict" but the trial court declined to permit impeachment. This Court set aside the jury verdict for other reasons but stated the general rule "that affidavits of a juror should not be received to impeach a verdict." 123 W. Va. at 437, 15 S.E.2d at 405. In support of the general rule, this Court in *Miller* cited *Graziani v. Fimple*, 110 W. Va. 383, 158 S.E. 658 (1931), where we refused to permit a juror's affidavit to impeach the verdict. The basis for the impeachment was the juror claimed he voted to award damages to the plaintiff because he had been informed by two other jurors that the defendant was covered by insurance.

Both *Miller* and *Graziani* represent situations where the impeachment involved matters which surrounded the jury deliberations.[5] As we have earlier stated, most courts

---

[4] This point was summarized in Syllabus Point 7 of *State v. Johnson, supra:*

"A motion for a new trial on the ground of the misconduct of a jury is addressed to the sound discretion of the court, which as a rule will not be disturbed on appeal where it apears that defendant was not injured by the misconduct or influence complained of. The question as to whether or not a juror has been subjected to improper influence affecting the verdict is a fact primarily to be determined by the trial judge from the circumstances, which must be clear and convincing to require a new trial; proof of mere opportunity to influence the jury being insufficient."

[5] No attempt has been made to exhaustively review all of our cases involving the impeachment of a jury verdict. *See,* Note, *Jurors and The Sanctity of Their Verdict,* 63 W. Va. L. Rev. 261 (1961). We do not deal with those cases decided before the 1955 amendment to W. Va. Code, 62-3-6, which prevented separation of jurors in felony cases. In some of these cases, we have treated the problem as one of jury misconduct and have considered jurors' affidavits after the verdict was returned. *E.g., State v. Muncey,* 102 W. Va. 462, 135 S.E. 594 (1926); *State v. Cotts,* 49 W. Va. 615, 39 S.E. 605 (1901). It is obvious that where jury misconduct is in the presence of third parties such third parties may furnish evidence relative to the misconduct.

refuse to permit this type of impeachment. At least from a factual basis, our cases recognize the general rule that impeachment may not be permitted on matters inherent to the jury's deliberative process.

The affidavit in the present case is confined to events that occurred during the jury's deliberations. Defendant first alleges that a juror, named in the affidavit, stated his wife had been convicted of assault and battery and that the penalty for this offense was a fine.[6] Another juror agreed that the penalty was a fine. As a consequence, the impeaching juror in her affidavit claims she was mislead into voting for conviction on the basis that the defendant would only receive a fine. It is generally acknowledged that a juror's claim that he was confused over the law or evidence and therefore participated in the verdict on an incorrect premise is a matter that inheres in or is intrinsic to the deliberative process and cannot be used to impeach the verdict. *E.g., Chicago, Rock Island and Pacific Railroad Company v. Speth,* 404 F.2d 291 (8th Cir. 1968); *Travis v. State,* 397 So.2d 256 (Ala. Cr. App. 1981), *writ denied sub nom., Ex parte Travis,* 397 So.2d 265, Ala.; *State v. Hill,* 239 Iowa 675, 32 N.W.2d 398 (1948); *State v. Sheldon,* 301 N.W.2d 604 (N.D. 1980); *State v. Fuino,* 608 S.W.2d 892 (Tenn. Cr. App. 1980); *Hill v. State,* 493 S.W.2d 847 (Tex. Cr. App. 1973); *Fuller v. Commonwealth,* 190 Va. 19, 55 S.E.2d 430 (1949); *Olson v. Williams,* 270 Wis. 57, 70 N.W.2d 10 (1955); 76 Am.Jur.2d *Trial* § 1220 (1975).

The impeaching juror further alleges that other members of the panel "did verbally abuse me during the deliberation and caused me to vote against my convictions." This allegation is another matter intrinsic to the

---

[6] The record indicates that on voir dire this juror had disclosed to the trial court that his wife had been convicted of assault and battery. He indicated that this incident would not interfere with his ability to fairly judge the case. No motion was made by this defendant to strike this juror for cause. His assertion of the juror's prejudice after the verdict is not well taken since the defendant did not exercise due diligence on voir dire. 76 Am.Jur.2d *Trial* § 1228 (1975).

jury's deliberations. While there may be some occasion where the facts might be sufficient to warrant a trial court to make further inquiry on this point, such is not the case before us. Of some importance is the fact that after the jury verdict was announced, the jurors were separately polled and all acknowledged their assent to the verdict. The general rule is that statements relative to intimidation or coercion by fellow jurors cannot ordinarily be received to impeach the verdict. *Fox v. State*, 49 Ala. App. 204, 269 So.2d 917 (1972); *Des Jardins v. State*, 551 P.2d 181 (Alaska 1976); *State v. Melcher*, 15 Ariz. App. 157, 487 P.2d 3 (1971); *State v. Berch*, 222 N.W.2d 741 (Iowa 1974); *State v. Hoskins*, 292 Minn. 111, 193 N.W.2d 802 (1972); *State v. Forsyth*, 13 Wash. App. 133, 533 P.2d 847 (1975); *State v. Aker*, 54 Wash. 342, 103 P. 420 (1909); Annot., 97 A.L.R. 1038 (1935). The obvious danger in permitting such a practice is that coercion and intimidation are rather subjective terms and may vary according to the individual personalities of the jurors.

We find no merit in the impeaching juror's final two allegations. First, she states that general expressions were made by various unidentified members of the jury relative to their belief or disbelief of some portions of the witnesses' testimony. This statement is a clear example of a matter inhering in the deliberative process of the jury. Another point raised by the impeaching juror was that a fellow juror appeared ill which caused her to want "to get the entire deliberations over as quickly as possible." This statement is at odds with her initial contention that she was coerced by her fellow jurors into voting for conviction. In any event, the matter again inheres in the jury's deliberative process and is not impeachable by her affidavit. *Gafford v. State*, 440 P.2d 405 (Alaska 1968); *State v. Forsyth*, 13 Wash. App. 133, 533 P.2d 847 (1975). The same applies to her statement that she was upset that the "juror could not leave the jury room."

We conclude that the trial court after reviewing the affidavit was entirely correct to reject it as grounds for

setting the verdict aside since it was facially insufficient as a matter of law.[7]

Another error assigned by the defendant is that certain voir dire questions which he tendered were not asked by the trial court. Most of these questions related to the presumption of innocence. We find, however, that the jury was asked about their ability to abide by the presumption of innocence.[8] Thus, the matter was in fact covered. The refusal to give a number of the defense instructions is also assigned as error. The trial court, however, gave a charge which substantially covered the matters contained in the rejected instructions. We, therefore, find no merit to this ground of error.

Nor do we find merit in the claim that the victim of the assault should not have been permitted to show the jury the scar he received. The defendant was indicted under our malicious wounding statute, W. Va. Code, 61-2-9, which requires proof of a bodily injury caused "with intent to maim, disfigure, disable or kill." We have traditionally held under this statute that evidence of the extent of an

---

[7] The federal courts generally ascertain whether the affidavit contains a facially sufficient ground for possible impeachment of the verdict, then set a further evidentiary hearing to more fully develop the evidence. *E.g., State v. Wilson,* 534 F.2d 375 (D.C. Cir. (1976); *Government of the Virgin Islands v. Gereau,* 523 F.2d 140 (3rd Cir. 1975), *cert. denied,* 424 U.S. 917, 47 L.Ed.2d 323, 96 S.Ct. 1119 (1976); *United States v. Howard,* 506 F.2d 865 (5th Cir. (1975); *Downey v. Peyton,* 451 F.2d 1284 (4th Cir. 1971). *See also, Gafford v. State,* 440 P.2d 405 (Alaska 1968); *Grist v. Upjohn Company,* 16 Mich. App. 452, 168 N.W.2d 389 (1969); *State v. Kociolek,* 20 N.J. 92, 118 A.2d 812 (1955); Note, 54 Mich. L. Rev. 1003 (1956); Annot., 58 A.L.R.2d 556 (1958).

[8] "MR. OLIVER:...

"Do you all understand that a man is presumed to be innocent until he is proven guilty?

"Do I have your promise that if you sit on the jury, you will consider Mr. Scotchel innocent until the State proves him guilty beyond a reasonable doubt?

"THE COURT:

"The Court, in that respect, will indicate to you that it is the basic law in most jurisdictions, and in this jurisdiction, that a person is presumed innocent until proven guilty beyond a reasonable doubt by the State."

injury is admissible since under the statute the State must show that the defendant inflicted the injury with an intent to produce a permanent disability or disfiguration. *State v. Sacco*, ___ W. Va. ___, 267 S.E.2d 193 (1980); *State v. Stalnaker*, 138 W. Va. 30, 76 S.E.2d 906 (1953); *McComas v. Worth*, 113 W. Va. 163, 167 S.E. 96 (1932); *State v. Taylor*, 105 W. Va. 298, 142 S.E. 254 (1928). We do not find any relevant analogy between the display of a scar and the introduction of gruesome photographs. *Cf. State v. Rowe*, 163 W. Va. 593, 259 S.E.2d 26 (1979). In the first place, a scar is not necessarily gruesome in appearance. A scar represents the present actual condition which is relevant to the issue of intent to cause permanent disability or disfigurement, while a gruesome photograph depicts the initial and temporary extent of the wound. In the latter, the shock effect often outweighs the probative value of the evidence.

The final error assigned relates to the prosecutor's appeal to the jury in his closing argument to consider their actions in light of the victim's family. While we do not approve of this type of argument, it does not in this case rise to the level of reversible error. The remark was made only once during the entire closing argument by the prosecutor. We have stated in Syllabus Point 2 of *State v. Brewster*, ___ W. Va. ___, 261 S.E.2d 77 (1979):

> "A judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice."

Here, we do not find any clear prejudice or manifest injustice.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Monongalia County.

*Affirmed.*