# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No.  16-0740** (McDowell 15-F-124-S)

**Donald Sidney Bailey,**
**Defendant Below, Petitioner**

**FILED**

**January 5, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Donald Sidney Bailey, by counsel David G. Thompson, appeals his conviction of two counts of first degree murder, one count of arson in the third degree, and one count of felony conspiracy. Respondent State of West Virginia, by counsel Gordon L. Mowen, II, responds in support of the circuit court's order.[1]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In the early morning hours of October 19, 2014, a passerby came upon a pickup truck that was ablaze on the side of the road. Fire fighters arrived at the scene within minutes. Soon thereafter, law enforcement, crime scene investigators, and personnel from the State Fire Marshal's Office arrived to process the scene. There, they discovered the burned bodies of two men in the truck who were later identified as Clinton Mullins ("Mullins") and Brandon Church ("Church"). The investigators took photos of the scene and the victims' bodies, and found five spent shell casings near the burned truck.

That same day, the investigators interviewed workers at nearby stores who claimed they saw a blue van in the area the day before. As the investigators stood along the roadway, a blue van passed them traveling in the direction of the burned truck. The investigators waved the van over. Inside the van were petitioner Donald Sidney Bailey; his wife, Sheila Bailey; and the couple's friend, April Justice. The police transported petitioner's wife to the police station where she waived her *Miranda* rights and gave a statement. Petitioner's wife stated that throughout the day and evening of October 18, 2014, six people (the "group"), including herself, her husband

---

[1] Petitioner's counsel filed an appendix record. The Court later granted petitioner's motion to supplement the appendix record. The Court also granted Respondent-State's motion to supplement the appendix record with fifty-two exhibits.

1

(petitioner), her two teenage daughters, and her friends Troy and April Justice, had been drinking alcohol at an area known as Orchard Branch.

April Justice later testified to the events of October 18 and 19, 2014, as follows: On October 18, 2014, the group gathered at a local park to visit and drink. As it was getting dark, the group ran low on alcohol, so they rode in petitioner's blue van to a local convenience store to buy alcohol. Thereafter, they went to another convenience store to buy ice. At both stores, the group ran into Mullins and Church (or "the victims"), who decided to join the group. Mullins and Church, who were in Church's truck, followed the group to Orchard Branch, where the party resumed. The group, now including Mullins and Church, partied and drank together for a few hours. Everyone was "pretty well drunk." At some point, Troy Justice became angry and "red" and ripped off his shirt. Soon thereafter, the party broke up. The group of six left together in the blue van, followed by Mullins and Church in Church's truck. It was raining and the windshield wipers in the van were "messed up" so petitioner's wife, who was driving the van, pulled over and stopped on the side of the road. Mullins and Church, who were not far behind, pulled in behind the parked van. Troy Justice and petitioner got out of the van and walked back to the truck. She (April Justice) saw that petitioner was holding a gun behind his back. Mullins and Church remained in their truck. She did not hear any argument, but did hear gunshots. Petitioner and Troy Justice came back to the van and they drove to the Justices' trailer. There, the group discussed what to do next. Around 1:00 a.m. on the morning of October 19, 2014, the group drove back to the truck with a gasoline can. Petitioner and Troy Justice "hollered" at Mullins and Church, and asked if they were okay. There was no response. Petitioner and Troy Justice then "walked over there. Gas was threw [sic], a lighter was lit. The truck was on fire."

On October 20, 2014, petitioner voluntarily went to the police department, waived his *Miranda* rights, and gave various statements regarding the events of October 18 and 19, 2014. Petitioner initially said Troy Justice shot the victims. However, in later recorded statements, petitioner claimed the following: While the group, Mullins, and Church were drinking at Orchard Branch, Troy Justice became angry when someone said something about his wife, April Justice. Troy Justice ripped off his shirt. The party then broke up. The group left in the blue van: Mullins and Church followed in Church's truck. The truck's lights were flashing at the van. Troy Justice got out of the van first and went back toward the truck. Petitioner and his wife also got out of the van. Mullins was yelling that he would "F--k whoever he wanted to f--k" apparently concerning petitioner's stepdaughters. Petitioner replied that Mullins could not "f--k his girls." Mullins, whose door was open, reached to get his gun. Troy Justice "hollered about a gun." Petitioner said he shot somewhere between Mullins's knees and the truck's floor to scare Mullins or to stop him from getting his gun. Petitioner did not remember shooting Church, who was not involved in the argument. Petitioner claimed he did not intend to kill anyone. Petitioner, his wife, and Troy Justice got back in the van. The group went to the Justices' trailer where Mr. Justice got a gas can. The group left the van there and drove back to the victims' truck in the Justices' Suburban. Troy Justice threw gasoline on the truck and then lit it on fire.

On February 24, 2015, a McDowell County grand jury indicted petitioner, his wife, and Troy Justice for the first degree murder of Mullins, the first degree murder of Church, third degree arson, and conspiracy. The grand jury indicted petitioner's wife and Troy Justice on the same charges, plus one count of accessory after the fact of murder.

2

Petitioner's five-day trial commenced on June 8, 2016. The State called thirty witnesses including the following:

A.S.[2], one of petitioner's minor stepdaughters, testified as follows: At Orchard Branch, Mullins fired a gun up in the air. Sometime later, Troy Justice became angry and the group decided to leave. The group drove away followed by Church and Mullins. The van pulled over and Church and Mullins pulled in behind them. From the van, she saw petitioner, who had a gun, walk over to the truck and started shooting at it. Afterwards, the group left, but they later returned and set the truck on fire.

Dr. Allen Mock, the State's Chief Medical Examiner, testified by deposition that Church's death was caused by a gunshot wound to the chest, further complicated by thermal burns; and that the manner of death was ruled a homicide. Dr. Jimmie Smith, the State's First Deputy Chief Medical Examiner, testified that Mullins had been shot twice in the chest, that the trajectory of the shots indicated Mullins had been seated on the passenger side of the truck when he was shot, Mullins died of gunshot wounds to the chest, and the manner of death was ruled a homicide.

During petitioner's case-in-chief, his counsel called three witnesses: First, forensic chemist Robert S. White opined as to petitioner's and the victims' states of intoxication.

Second, forensic psychiatrist Pogos Voskanian, M.D. testified to a reasonable degree of medical certainty that petitioner was suffering from various conditions, including a severe alcohol use disorder, and that due to petitioner's degree of intoxication on the night of the shooting, he was incapable of acting with intent or premeditation and was suffering from diminished capacity.

Finally, petitioner testified in his own defense. Petitioner's testimony mirrored his recorded statement to the police. However, he added the following: He had been drinking beer throughout the day and into the evening of October 18, 2014. He had known Mullins for years and they were good friends. He had known Church from the day Church was born. At Orchard Park, he was drinking beer, moonshine, and mixed drinks. At some point, Mullins got a gun out of his truck and fired it once or twice into the air. When Troy Justice ripped off his shirt, "[i]t went from being all friendly to going all bad." At the scene of the shooting, Troy Justice got out of the van first, petitioner's wife got out next, and then petitioner exited the van. Troy Justice walked to the passenger side of Church's truck where Mullins was sitting. The passenger side door was open and Troy Justice was standing near Mullins and arguing with him. Petitioner heard Troy Justice say, "Gun." He thought he saw a gun. He took his gun from his pocket and fired into the truck. He always carried a loaded gun. He was not aiming for anyone's heart. He

---

[2] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); State v. Brandon B., 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

quickly left the area because he believed Mullins or Church would shoot him. Thereafter, Troy Justice set the van on fire.

On July 15, 2016, the jury, following twenty-nine minutes of deliberation, found petitioner guilty of the first degree murder of Mullins, the first-degree murder of Church, third degree arson, and felony conspiracy. The jury did not recommend mercy on the murder convictions.

On July 29, 2016, the circuit court denied petitioner's motions for a new trial and a post-verdict judgment of acquittal, and sentenced petitioner to two terms of life in prison without the possibility of parole for the murders, not less than one nor more than three years in prison for third degree arson, and not less than one nor more than five years in prison for felony conspiracy, all sentences to be served consecutively. Petitioner now appeals.

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

Petitioner raises four assignments of error on appeal. Petitioner first argues that the circuit court erred in failing to declare a mistrial upon the prosecutor's use of the word "murder" to describe the manner of the victims' deaths. A circuit court's decision to grant or deny a motion for a mistrial is reviewed under an abuse of discretion standard. *State v. Thornton*, 228 W.Va. 449, 459, 720 S.E.2d 572, 582 (2011).

Pretrial, petitioner's counsel filed various motions in limine, including a motion to preclude the State from saying at trial that the victims had been "murdered." The circuit court instructed the prosecutor to use the word "homicide" at trial. At trial, State Police Sgt. Robert Richards testified that he participated in the investigation of petitioner's case. The State then asked Sgt. Richards the following question on direct: "In October of 2014, specifically the 20th of October, 2014, did you . . . assist the troopers here in an investigation that – of an alleged murder?" Sgt. Richards replied, "Yes, sir." Petitioner's counsel objected and moved for an immediate mistrial on the ground that the State had used the word "murder," as opposed to the word "homicide," in violation of the circuit court's pretrial order. The State responded, "I didn't use that term. I said "alleged." The circuit court replied that the State said, "'alleged murder.' Well, at any rate, the motion for a mistrial is denied and overruled."

The circuit court did not abuse its discretion in denying petitioner's motion of a mistrial due to the State's use of the term "alleged murder" at trial. The State's question, which was addressed to an officer who investigated petitioner's alleged crimes, was foundational and went to the type of investigation the officer was called to perform, i.e., an "alleged murder" investigation. Clearly, in asking the question, the State was not intimating that petitioner

4

"murdered" the victims. Thus, the use of the word "murder" did not violate the circuit court's pretrial order. Accordingly, we find no error.

Petitioner's second assignment of error is that the circuit court erred in allowing the State to introduce into evidence at trial post-mortem photographs of the victims, which he claims were repugnant and gruesome. Petitioner avers that the photographs may have so incensed the jury that they disregarded petitioner's evidence, including his self-defense evidence. Petitioner highlights that Rule 403 of the West Virginia Rules of Evidence requires a trial court to "exclude relevant evidence if its probative value is substantially outweighed by danger of . . . unfair prejudice."

"The admissibility of photographs over a gruesome objection must be determined on a case-by-case basis pursuant to *Rules 401* through *403* of the *West Virginia Rules of Evidence*." Syl. Pt. 5, *State v. Greenfield*, 237 W.Va. 773, 791 S.E.2d 403 (2016) (quoting Syl. Pt. 8, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994)). Additionally,

> Rule 401 of the West Virginia Rules of Evidence requires the trial court to determine the relevancy of the exhibit on the basis of whether the photograph is probative as to a fact of consequence in the case. The trial court then must consider whether the probative value of the exhibit is substantially outweighed by the counterfactors listed in Rule 403 of the West Virginia Rules of Evidence. As to the balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse." Syl. Pt. 10, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994).

Syl. Pt. 6, *Greenfield*, 237 W.Va. at 776, 791 S.E.2d at 407.

The lengthy record on appeal reveals that, prior to trial, the circuit court addressed each of the sixty-five photographs advanced by the State on multiple occasions. At those hearings and in accordance with *Derr/Greenfield*, the circuit court determined the relevancy of each photograph by determining whether the image portrayed was probative to a fact of consequence in the case. The circuit court then determined whether any of the relevant photographs found were more probative than prejudicial. In so doing, the circuit court granted petitioner's motion to exclude thirteen of the sixty-five photos.

On appeal, petitioner specifically mentions only two photographs entered into evidence at trial. The first of those photographs shows the burned remains of Mullins and Church in the truck; the other photograph shows Church's burned leg inside a boot. The State maintains it used these photographs at trial to support its theory that the victims were shot and then burned; to show petitioner's intent to kill the victims; to establish the cause of death; to assist the expert who performed the autopsy in testifying; and to identify Church's body. With regard to the photograph of the boot on Church's burned leg, the circuit court found it was both relevant to Church's identity and his position in the burned truck. The circuit court found that the image of the burned bodies, which showed the bullet wounds in the victims' chests, was relevant to petitioner's claim that he shot towards the floor of the truck and did not intend to kill the victims.

The circuit court also found that each photograph was more probative than prejudicial, and not substantially outweighed by the factors listed in Rule 403 of the West Virginia Rules of Evidence, i.e., "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Having reviewed the photographs, the transcripts of the relevant pretrial hearings and the trial, the relevant orders, and the parties' arguments, we find that the circuit court did not abuse its broad discretion in admitting the photographs of which petitioner complains. We concur with the trial court's finding that the photographs were relevant in light of the State's purpose for presenting each. We also find that the photographs, although gruesome, are not more prejudicial than probative on the issue raised by each. Therefore, absent a clear abuse of discretion, we reject this assignment of error.

Petitioner next argues that he is a victim of jury misconduct given that the jury deliberated for less than thirty minutes, before finding him guilty. Petitioner avers that the jury could not have fully considered petitioner's defenses in that time period.

A claim of juror misconduct implicates matters either intrinsic or extrinsic to the jury's deliberative process. E.g., *State v. Scotchel*, 168 W.Va. 545, 550, 285 S.E.2d 384, 388 (1981). A petitioner may seek to impeach the jury's verdict by establishing that the jury engaged in extrinsic misconduct, but ordinarily may not seek to set aside the verdict by demonstrating that the jury engaged in intrinsic misconduct. *Id.* at 545, 285 S.E.2d at 385-86, syl. pts 2 and 3. "[A] challenge to a jury's verdict that is based solely upon the length of the deliberations constitutes an intrinsic challenge that we will not entertain." *State v. Jenner,* 236 W.Va. 406, 417, 780 S.E.2d 762, 773 (2015). Moreover, "[t]he length of jury deliberations is necessarily indeterminate []" and "could signify that the jury found overwhelming evidence of guilt not justifying the possibility of parole." *Id. Accord State v. Mayle*, No. 13–0437, 2014 WL 2782126, at * 4 (W.Va. June 19, 2014) (memorandum decision) (recognizing that length of jury deliberations constitutes intrinsic challenge to verdict and finding "no reason to deviate from this longstanding law"). Consequently, because petitioner raises a claim of alleged intrinsic jury misconduct, we find this assignment of error fails as a matter of law.

In petitioner's fourth and final assignment of error, he alleges cumulative error. There can be no cumulative error without multiple errors. *State v. Knuckles*, 196 W.Va. 416, 425, 473 S.E.2d 131, 140 (1996). ("Cumulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."). Because we have found no error, the cumulative error doctrine does not apply. Thus, we reject this assignment of error.

Accordingly, for the foregoing reasons, we affirm petitioner's convictions.

Affirmed.

**ISSUED:** January 5, 2018

6

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker