**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

State of West Virginia,
Plaintiff Below, Respondent

**v.) No. 22-791** (McDowell County CC-27-2020-F-72)

Susan Shepherd,
Defendant Below, Petitioner

## MEMORANDUM DECISION

Petitioner Susan Shepherd appeals the Circuit Court of McDowell County's October 24, 2022, order sentencing her to three to fifteen years in prison for driving while impaired proximately causing the death of any person ("DUI causing death").[1] On appeal, petitioner presents three assignments of error, arguing: 1) the State presented insufficient evidence of DUI causing death, 2) the circuit court erred when it denied petitioner's motion for judgment of acquittal and petitioner's motion for new trial based upon alleged juror misconduct, and 3) the court erred when it denied her credit for time served on home confinement. Upon our review, finding no substantial question of law and no prejudicial error, we determine oral argument is unnecessary and that a memorandum decision is appropriate. *See* W. Va. R. App. P. 21(c).

On June 5, 2019, petitioner was driving on U.S. Route 52 in McDowell County, West Virginia ("Route 52"), when she crossed the center line and crashed into a vehicle driven by Eric Presley. Ultimately, Presley died because of the injuries he sustained in the crash. On June 25, 2019, petitioner was arrested for DUI causing death and incarcerated in jail on a cash bond. Petitioner was subsequently indicted for DUI causing death and negligent homicide.

On July 3, 2019, the circuit court heard petitioner's motion for bond reduction. After considering petitioner's criminal history involving convictions related to substance abuse and misdemeanor crimes of violence, the court granted a bond reduction with the condition of home confinement. The terms of petitioner's home confinement allowed her to leave home only if she had an appointment with her doctor or attorney. On July 9, 2020, the circuit court modified the terms of petitioner's home confinement to allow her to go grocery shopping under certain conditions.

Petitioner's first trial in September 2020 ended in a mistrial with a hung jury on the charge of DUI causing death. The circuit court entered a judgment of acquittal on the negligent homicide charge. Petitioner remained on home confinement throughout the time she awaited retrial, which occurred in June 2022.

---

[1] Petitioner appears by counsel Stephanie A. Pfeifer. Respondent appears by Attorney General Patrick Morrisey and Deputy Attorney General Andrea Nease Proper.

At petitioner's second trial, the State introduced substantial evidence of petitioner's intoxication on the day of the crash. Wendy Stacy, a manager of a convenience store, testified that she sold petitioner alcohol on the morning of the crash. John Chafin, a member of the Iaeger Fire Department, lived near the location of the crash and witnessed its aftermath. Chafin observed that petitioner could not get out of her vehicle because the parking brake was "impaled in her left leg." Despite this obvious injury, petitioner did not complain of being in pain and "mostly just wanted out of her car and wanted something to drink and smoke." Elliot Godfrey testified that he was driving on Route 52 and stopped at the crash site. Godfrey opened the door to petitioner's vehicle, pulled back the airbag, and observed petitioner "eating crackers" with the parking brake "stuck all the way" into her leg. Godfrey asked petitioner if she was okay, and she responded that she wanted something to drink. Godfrey retrieved a Diet Coke from petitioner's back seat and said "[i]t smells like alcohol in here." Petitioner responded, "I've been eating Sprees all day." Kenneth Little, a West Virginia Department of Natural Resources ("DNR") Officer at the time, arrived at the scene of the crash in response to the 9-1-1 call.[2] Godfrey explained that he told Officer Little that "[y]ou need to go check on [petitioner]. She's been drinking or something … because she's pretty inebriated up there." Godfrey stated that he was "100 percent" sure petitioner was drunk based upon her peculiar behavior (eating crackers and seeming oblivious to pain), the odor of alcohol in her car, and her slurred speech. Officer Little testified that he noticed the parking brake "in the shin of [petitioner's] leg" and noted that "she was acting fairly calm."

McDowell County Sheriff's Department Corporal Ronald Blevins also provided testimony during the trial that he arrived at the scene to investigate the crash. When Corporal Blevins approached petitioner's vehicle, he noticed the odor of an alcoholic beverage. Corporal Blevins observed petitioner's eyes were red, bloodshot, and glassy. Petitioner's speech was slurred, her face was flushed, and "she had trouble finding her mouth" when drinking from a soda bottle. Corporal Blevins also found petitioner's tolerance for pain to be "extraordinary" and indicative of intoxication. Corporal Blevins was unable to administer the "walk and turn" and "one-leg stand" field sobriety tests because of petitioner's injuries, but Corporal Blevins conducted a modified "horizontal gaze nystagmus" test, which petitioner failed. Further, Corporal Blevins testified that based upon his investigation at the scene, petitioner caused the crash by crossing the center line of Route 52 and striking Presley's vehicle. Dr. Jacqueline Benjamin, M.D., a forensic pathologist for the West Virginia Medical Examiner's Office, opined that Presley died because of blunt force injuries that he sustained in the crash.

The defense presented testimony from two witnesses: West Virginia State Police Sergeant C.M. Workman and Travis Jones, an expert in DUI detection. Sergeant Workman testified that he is a "crash reconstructionist," but he did not provide any relevant testimony regarding causation of the crash because he did not have access to the vehicles. Jones questioned the reliability of the horizontal gaze nystagmus field sobriety test conducted at the scene by Corporal Blevins.

After deliberation, the jury convicted petitioner of DUI causing death on June 8, 2022. At sentencing, the court denied petitioner's motion for credit for time served on home confinement. In her first assignment of error on appeal, petitioner argues there was insufficient evidence to

---

[2] After the crash and prior to trial, Kenneth Little left his employment with the DNR to become a West Virginia State Police Trooper.

sustain her conviction. "The Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla*, 227 W. Va. 492, 497, 711 S.E.2d 562, 567 (2011) (citing *State v. LaRock*, 196 W. Va. 294, 304, 470 S.E.2d 613, 623 (1996)).

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Further,

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*Id.* at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part. To prove DUI causing death, the State had to present evidence that petitioner drove a vehicle while she was in an impaired state, and such impaired state proximately caused the death of Eric Presley. *See* W. Va. Code § 17C-5-2(b) (identifying elements of DUI causing death). The relevant statutory definition of an "impaired state" includes a person who is under the influence of alcohol. W. Va. Code §17C-5-2(a)(1)(A).

When viewed in a light most favorable to the prosecution, we find sufficient evidence to support the jury's conclusion that petitioner is guilty of DUI causing death. After his investigation of the crash, Corporal Blevins determined that petitioner crossed the center line and struck Presley's vehicle; petitioner did not successfully rebut this testimony. Dr. Benjamin, a forensic pathologist, provided her expert opinion that Presley died because of blunt force injuries he sustained in the crash. And although petitioner's expert Jones questioned the reliability of the horizontal gaze nystagmus field sobriety test administered by Corporal Blevins, multiple witnesses testified to petitioner's behavior after the crash, her obliviousness to pain, and other reliable evidence indicating that petitioner was in an impaired state when the crash occurred. After careful consideration of the record on appeal, we find that the State presented adequate evidence to permit a rational jury to find the essential elements of the offense beyond a reasonable doubt.

In her second assignment of error, petitioner argues the circuit court erred when it denied her motion for judgment of acquittal and her alternative motion for a new trial. In support,

3

petitioner claims the court should have granted her requested relief because the jury's brief seventeen-minute deliberation is evidence of juror misconduct. We have held that

> [a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

Syl. Pt. 1, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000) (internal quotation marks and citations omitted). "A jury verdict may not ordinarily be impeached based on matters that occur during the jury's deliberative process which matters relate to the manner or means the jury uses to arrive at its verdict." Syl. Pt. 1, *State v. Scotchel*, 168 W. Va. 545, 285 S.E.2d 384 (1981). In *State v. Jenner*, 236 W. Va. 406, 417, 780 S.E.2d 762, 773 (2015), we opined that "[t]he length of jury deliberations is necessarily indeterminate. The brief period of deliberations in this case could signify that the jury found overwhelming evidence of guilt. . . . Moreover, a challenge to the length of jury deliberations constitutes an intrinsic challenge to a verdict that we will not entertain." And importantly, petitioner's complaint about the temporal length of the jury's deliberation does not satisfy her burden of proving "by clear and convincing evidence" that juror misconduct occurred, and "that the misconduct has prejudiced the defendant to the extent that the defendant has not received a fair trial." Syl. Pt. 3, in part, *State v. Sutphin*, 195 W. Va. 551, 466 S.E.2d 402 (1995). Petitioner's "mere allegation of juror misconduct is insufficient to warrant a new trial," because she has not presented "proof that some improper event has occurred. Misconduct on the part of the jury as grounds for a new trial is not presumed but must be fully proved by the moving party." *Jenner*, 236 W. Va. at 418, 780 S.E.2d at 774 (citing *State v. Trail*, 236 W. Va. 167, 778 S.E.2d 616, 624 (2015)). After reviewing the record in this case, we conclude the circuit court did not abuse its discretion when denying the motion for new trial based upon the jury's seventeen-minute deliberation.

Finally, petitioner contends that the circuit court erred when it denied her motion to receive credit for time served on home confinement, both while awaiting trial and after conviction prior to sentencing. Unless a sentence "violates statutory or constitutional commands," we review a court's imposition of a sentence for an abuse of discretion. Syl. Pt. 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997). Still, "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982).

Each of these types of home confinement require different considerations. Regarding pre-conviction home confinement, petitioner claims that it was penal in nature, because she was only allowed to leave home for doctor appointments, attorney appointments, and to go grocery shopping. Respondent maintains that petitioner is not entitled to credit for time served on pre-conviction home confinement because the Home Incarceration Act only applies to "offenders" who have been convicted of a crime punishable by jail or prison. W. Va. Code § 62-11B-3. We agree with respondent. This Court has held that

> [w]hen a person who has been arrested, but not yet convicted of a crime, is admitted to pre-trial bail with the condition that he be restricted to home

confinement pursuant to West Virginia Code § 62-1C-2(c) (1992), the home confinement restriction is not considered the same as home confinement under the Home Confinement Act, West Virginia Code §§ 62-11B-1 to -12 (1993). Therefore, the time spent in home confinement when it is a condition of bail under West Virginia Code § 62-1C-2(c) does not count as credit toward a sentence subsequently imposed."

Syl. Pt. 2, *State v. Jedidiah C.*, 240 W. Va. 534, 814 S.E.2d 197 (2018) (quoting Syl. Pt. 4, *State v. Hughes*, 197 W. Va. 518, 476 S.E.2d 189 (1996)). "Because [p]etitioner was not an 'offender' under the Act, it is not applicable to [her]." *Jedidiah*, 240 W. Va. at 539, 814 S.E.2d at 202. Consequently, we find that the circuit court did not err in denying her motion to receive credit for time served on pre-conviction home confinement.[3]

Regarding credit for time served on post-conviction home confinement, "[u]pon conviction of a person, the circuit court . . . *may, in its discretion*, grant credit for time spent on home incarceration as a condition of bail toward any sentence imposed, if the person is found to have complied with the terms of bail." W. Va. Code § 62-11B-11(b) (emphasis added). West Virginia Code § 62-11B-5 of the Home Incarceration Act provides terms and conditions to be included in an order for post-conviction home incarceration. Here, the circuit court's order granting petitioner home confinement does not include all the requirements imposed by West Virginia Code § 62-11B-5 of the Home Incarceration Act. Because the circuit court's home confinement order does not include these requirements, we cannot find that the court abused its discretion when it refused to grant petitioner credit for time served on post-conviction home confinement.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 7, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

---

[3] The Legislature amended West Virginia Code § 62-1C-1a (effective June 5, 2020) to state that an arrested person's conditions of bail "may include that the person charged shall . . . [p]articipate in home incarceration pursuant to § 62-11B-1 *et seq.* of this code . . . ." Neither party argues that the amendment impacts the analysis of this assignment of error as to credit for time spent on home incarceration, pretrial, so we cannot consider it. *See* Syl. Pt. 13, in part, *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014) ("Courts cannot concoct or resurrect arguments neither made nor advanced by the parties."). The Legislature amended West Virginia Code § 62-1C-1a again in 2021; that amendment did not affect the language quoted immediately above.