IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,                )
                                    )     No. 70438-9-I
            Respondent,             )     (consolidated w/70795-7)
                                    )
    v.                              )     DIVISION ONE
                                    )
JOSHUA JEEP THOMAS, a/k/a           )
RICHARD EUGENE PILL,                )     UNPUBLISHED OPINION
                                    )
            Appellant.              )     FILED: June 22, 2015
_____)

BECKER, J. — This is an appeal of a conviction for second degree assault.

Taken as a whole, the instructions did not relieve the State of its burden to

disprove self-defense. But the instruction defining assault permitted the jury to

convict the defendant of a felony based on facts that would prove only

misdemeanors. The misleading instruction was proposed by defense counsel.

We conclude appellant is entitled to a new trial due to ineffective assistance of

counsel.

Appellant Joshua Thomas, a man in his sixties, lives in a rural part of

southern Whatcom County near Camp 2 Road, a hard-pack road covered by

loose gravel. Camp 2 Road is not maintained by the county. Thomas and other

adjacent property owners are responsible for its upkeep. Speeders have caused

recurring problems for the residents because they tear up the road.

On July 19, 2011, a 15-year-old boy, JC, was heard by neighbors speeding with his motorcycle up and down Camp 2 Road. Thomas came out to the road and confronted him. JC sped off up a logging road but returned a short time later. He was again confronted by Thomas, who pulled out a gun and started cursing. According to JC, Thomas pointed the gun at his head. The State charged Thomas with second degree assault in violation of RCW 9A.36.021(1)(c), assault with a deadly weapon.

A trial was held in April 2013. JC testified about what happened when he rode back down to where he first encountered Thomas:

> And when I got close enough, he came out of the bushes holding a gun out to me saying stop. So my bike died, and I restarted it and tried to turn around. By that time, he was right next to me and then pulled me off my bike and held a gun to my head and started yelling at me.

JC testified that Thomas cocked his gun and said, "'don't move or I'll shoot you, you little bastard,'" while pulling him off the motorcycle. Then Thomas "let go of me and told me to leave. He uncocked his gun, and then I went, picked up my bike and started it and left."

According to Thomas, he held the gun in the air but never pointed the gun at JC. Thomas testified that he was annoyed when he heard the sound of a motorcycle exhaust system that day and he decided to try to contact the rider. Thomas testified that when he was about 15 feet away, the rider gave him the "one-finger salute," gunned his engine, and spun out, causing gravel to fly up and hit Thomas. The rider came back a few minutes later, still traveling at high speed. The rider then stopped abruptly about 40 feet away, hunkered down, and

2

revved his engine. Thomas said he was afraid the rider was about to charge at him, so he walked toward the motorcycle to give the rider less room to gain speed. Thomas said he pulled out a small pistol and pointed it upwards so the rider would see it and stand down. He testified that he put his left hand on the rider's shoulder, glared at him, and told him to slow down because speeding damages the road.

The jury convicted Thomas of second degree assault and returned a special verdict finding that Thomas was armed with a firearm.

Thomas moved for a new trial through new counsel. He argued that trial counsel was ineffective for proposing a misleading definition of assault that became instruction 11. The trial court denied the motion. Thomas appeals.

Where instructional error is the result of alleged ineffective assistance of counsel, the doctrine of invited error does not preclude review. State v. Kyllo, 166 Wn.2d 856, 861, 215 P.3d 177 (2009). A claim of ineffective assistance of counsel is reviewed on appeal de novo. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

To establish ineffective assistance of counsel, Thomas must show that (1) his counsel's performance was deficient and (2) the deficient performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Thomas must overcome a strong presumption that his counsel's representation was adequate and effective. State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). And to show prejudice, he must establish "there is a reasonable probability that, except for counsel's

unprofessional errors, the result of the proceeding would have been different."

McFarland, 127 Wn.2d at 335.

The State built its case around instruction 13, the to-convict instruction for

second degree assault:

> To convict the defendant of the crime of assault in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt.
>
> (1) That on or about 19th day of July, 2011, the defendant assaulted [JC] with a deadly weapon; and
>
> (2) That this act occurred in the State of Washington.
>
> If you find from the evidence that each of these elements have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
>
> On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any of these elements, then it will be your duty to return a verdict of not guilty.

## TWO DEFINITIONS OF ASSAULT

The State's theory of second degree assault depended on the jury finding

that Thomas pointed the gun at JC to frighten him.

The defense theory was twofold: Thomas either acted in self-defense or,

at most, committed the misdemeanors of fourth degree assault and unlawful

display of a weapon. The defense theory of fourth degree assault depended on

the jury finding that Thomas laid his hand on JC's shoulder while he held the gun.

Because of the two different theories about what conduct may have

amounted to an assault, the court accepted defense counsel's proposal to give

the jury two different definitions of "assault." Both definitions were included in

instruction 11:

4

INSTRUCTION NO. 11

An assault is an intentional touching of another person, with unlawful force that is harmful or offensive regardless of whether any physical injury is done to the person. A touching is offensive if the touching would offend an ordinary person who is not unduly sensitive.

An assault is also an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

An act is not an assault, if it is done with the consent of the person alleged to be assaulted.

Trial counsel for Thomas testified in support of the motion for a new trial.

He explained that he drafted the instruction to give the jurors the option of a misdemeanor conviction if they did not believe Thomas actually pointed the gun:

I believed if the jury found Mr. Thomas pointed the gun, he would be guilty of assault 2°. However, if it did not believe he pointed the gun, but only that he displayed or brandished the gun, he was guilty only of unlawful display of a weapon. It would be possible for the jury also to find assault 4° based on an impermissible touching by putting his hand on [JC]'s shoulder.

Thomas claims that in the unique circumstances of this case, combining the two definitions of assault in a single instruction rendered the instruction misleading. Jury instructions are proper when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. State v. Barnes, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005).

The first paragraph of instruction 11, defining assault as an offensive intentional touching, reflected the defense theory. The second paragraph, defining assault as an act that is intended to and does in fact cause fear of bodily injury, reflected the State's theory. While both were correct definitions of assault, instruction 11 did not explain which definition was meant to go with which theory.

5

As a result, Thomas argues, the jury was allowed to rely on the first paragraph's definition of fourth degree assault to determine the meaning of "assault" as used in instruction 13, the to-convict instruction for second degree assault.

When Thomas made this argument at the hearing on the motion for a new trial, the trial court denied the motion in part because it was only speculation that the jurors might have applied instruction 11 incorrectly. Thomas moved for reconsideration supported by declarations from two jurors. One of the declarants said the guilty verdict was decided based on the law on "showing a firearm in a way to create fear in an individual,"[1] along with the fact that Thomas grabbed JC by the shoulder. This declarant said he did not believe JC's testimony about the gun being held to his head. The other declarant said the jurors felt the gun was used "to intimidate" JC and put him in fear "even if it wasn't pointed at him." This declarant said that for him, the act of assault was a combination of "the fact that Mr. Thomas showed the kid a loaded revolver as he approached and also attempted to jerk him off the bike and that he touched his shoulder."

The State correctly points out that the jurors' deliberations inhere in the verdict and their declarations may not be used to impeach the verdict. State v. Forsyth, 13 Wn. App. 133, 138, 533 P.2d 847 (1975). But Thomas did not offer the declarations to impeach the verdict. He offered them "to illustrate" how the two definitions could be misleading. The trial court agreed that its previous ruling

---

[1] Instruction 22 stated as follows: "A person commits the crime of unlawfully displaying a weapon when he or she carries, exhibits, displays or draws a firearm in a manner, under circumstances, and at a time or place that warrants alarm for the safety of other persons."

"invited you to bring affidavits, and you've done that." Like the trial court, we have considered the declarations not as evidence of the deliberations but to illustrate the problem with instruction 11.

Instruction 13 states that second degree assault is assault "with a deadly weapon." The first paragraph of instruction 11 states that "an assault is an intentional touching of another person, with unlawful force that is harmful or offensive regardless of whether any physical injury is done to the person." It was undisputed that Thomas, while holding a firearm, took hold of JC's shoulder. The primary fact in dispute was whether he pointed the gun at JC. Using the definition in the first paragraph, a juror could find that Thomas committed an "assault" of JC by grabbing his shoulder and could then conclude that the assault was "with a deadly weapon" because Thomas was holding his gun at the time. A juror reasoning in this fashion would not need to resolve the dispute about whether the gun was pointed at JC. The facts a juror found to support such reasoning would constitute fourth degree assault, or possibly fourth degree assault and unlawful display of a weapon—both of which are misdemeanors.

We therefore agree with Thomas that instruction 11 was misleading and trial counsel performed deficiently by offering it. Given the two definitions of assault, a juror may have understood that Thomas was guilty of committing "assault" with a deadly weapon, even if the juror did not find that Thomas intended to put JC in fear and apprehension that he was about to be shot. See State v. Byrd, 125 Wn.2d 707, 713-14, 887 P.2d 396 (1995).

The State contends the special verdict demonstrates that the jurors did not predicate their finding of assault on conduct constituting unlawful display of a weapon. But the special verdict only establishes that when Thomas assaulted JC, he was *armed* with a firearm. It does not demonstrate that the assault he committed was by pointing the firearm at JC or otherwise intentionally putting him in fear of bodily injury.

We conclude there is a reasonable possibility that the outcome of the trial would have been different if counsel had drafted instruction 11 in a way that restricted the offensive touching definition of assault to the misdemeanor charge of fourth degree assault.

## SELF-DEFENSE

Once the issue of self-defense is properly raised, the absence of self-defense "becomes another element of the offense which the State must prove beyond a reasonable doubt." State v. McCullum, 98 Wn.2d 484, 493-94, 656 P.2d 1064 (1983).

Jury instructions on self-defense must more than adequately convey the law. Read as a whole, the jury instructions must make the relevant legal standard manifestly apparent to the average juror. Kyllo, 166 Wn.2d at 864. "The jury should be informed in some unambiguous way that the State must prove absence of self-defense beyond a reasonable doubt." State v. Acosta, 101 Wn.2d 612, 621-22, 683 P.2d 1069 (1984).

Thomas contends the instructions taken as a whole failed to meet these standards in two ways: first, because instruction 13, the to-convict instruction,

8

did not set forth the State's obligation to prove the absence of self-defense along with the other elements of second degree assault; and second, because the phrase "with unlawful force" was included in one definition of assault in instruction 11 but not the other.

## 1. State's Burden To Disprove Self-Defense

The to-convict instruction for the charge of second degree assault was instruction 13, quoted above. It stated there were two elements of the crime that had to be proved beyond a reasonable doubt: that the defendant assaulted JC with a deadly weapon on the date in question and that the act occurred in Washington. It further stated, "If you find from the evidence that each of these elements have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty."

Because the jury has the right to regard the to-convict instruction as a complete statement of the law, it should state all elements the State is required to prove. State v. Smith, 131 Wn.2d 258, 263, 930 P.2d 917 (1997). Thomas contends that under this rule, the State's burden to disprove self-defense belongs in the to-convict instruction. He argues that omitting any reference to this burden in instruction 13 unconstitutionally relieved the State of its burden to prove every element of second degree assault. The prejudicial nature of the omission, Thomas argues, was demonstrated in closing argument when the prosecutor used instruction 13 to assert that there were "only two elements" on which the State had the burden of proof: "We have the burden here, and we have to prove what is enumerated as two different elements, only two elements." The

prosecutor was able to track instruction 13 in argument without acknowledging the State's burden of disproving the absence of self-defense. In discussing the claim of self-defense, the prosecutor simply argued that Thomas used more force than was necessary.

Thomas did not object to instruction 13 below, and his motion for a new trial did not allege that trial counsel was ineffective for failing to object to it. We determine on a case-by-case basis whether an unpreserved claim of error regarding a self-defense jury instruction constitutes a manifest constitutional error that can be raised for the first time on appeal. State v. O'Hara, 167 Wn.2d 91, 101, 217 P.3d 756 (2009) (as amended by order dated Jan. 21, 2010).

Including the State's burden to disprove self-defense in the to-convict instruction may well be a preferred practice. On its face, instruction 13 imposed upon the jury a duty to render a verdict of guilty if the State proved an assault with a deadly weapon occurred in Washington. Because there was a claim of self-defense, instruction 13 standing alone would likely constitute manifest constitutional error. See Acosta, 101 Wn.2d at 615 (reversible error where no instruction informed the jury whether petitioner or the State bore the burden of proving or disproving self-defense).

But instruction 13 did not stand alone. If a separate instruction is used to state the State's obligation to prove the absence of self-defense, omitting similar language from the to-convict instruction is not reversible error. State v. Hoffman, 116 Wn.2d 51, 109, 804 P.2d 577 (1991). In this case, the court did give a

separate instruction, instruction 14, modeled on <u>Washington Pattern Jury Instructions: Criminal</u> § 17.02 (2008) (WPIC).

> It is a defense to a charge of Assault in the Second Degree, Assault in the Fourth Degree and Unlawful Display of a Weapon that the force offered to be used was lawful as defined in this instruction.
> The offer to use force upon or toward the person of another is lawful when offered by a person who reasonably believes that he is about to be injured in preventing or attempting to prevent an offense against the person, and when the force is not more than is necessary.
> . . . .
> The State has the burden of proving beyond a reasonable doubt that the force offered to be used by the defendant was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

Instruction 14 informed the jury that the State had the burden of proving the absence of self-defense beyond a reasonable doubt. It also instructed the jury to return a verdict of not guilty if the State did not meet that burden.

In view of instruction 14's correct statement of the State's burden to prove the absence of self-defense, we conclude Thomas has not shown manifest constitutional error in the omission of the same language from instruction 13.

2. "With Unlawful Force" Omitted

One of the definitions of assault in instruction 11 did not include the phrase "with unlawful force." Thomas contends this phrase was necessary to adequately state the law of self-defense. Thomas preserved this argument for appeal by including it in the claim of ineffective assistance of counsel raised below in the motion for a new trial.

11

A person acting in self-defense acts lawfully. Acosta, 101 Wn.2d at 617. Accordingly, when there is a claim of self-defense in an assault case, the definition of "assault" should include the requirement that it be committed with unlawful force. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 35.50 note on use at 164-65 (3d ed. Supp. 2014).

Here, the first paragraph of instruction 11 defines assault as an intentional offensive touching "with unlawful force." However, the second paragraph, defining assault as an act intended to create fear of bodily injury, does *not* say that the act must be done "with unlawful force."

At the hearing on the motion for a new trial, Thomas' former defense counsel admitted that when preparing instruction 11, he did not review the notes following WPIC 35.50 or case law. He testified that he had no strategic reason for putting the phrase "with unlawful force" in the first paragraph but not in the second.

The State conceded, and the court agreed, that defense counsel should have included the phrase "with unlawful force" in both paragraphs of instruction 11. But the court also agreed with the State's argument that the omission did not warrant a new trial. With respect to both the charge of second degree assault and the lesser degree crimes, instruction 14 stated, "The State has the burden of proving beyond a reasonable doubt that the force offered to be used by the defendant was not lawful." The trial court concluded this statement sufficiently informed the jury that the State did not prove Thomas committed an act

amounting to second degree assault unless it proved that he acted with unlawful force.

Thomas disagrees with the trial court's determination that instruction 14 solved the problem. He contends the phrase "with lawful force" must be included in an instruction defining assault in order to lead the jury to the definition of lawful force found in the instruction on self-defense—which in this case was instruction 14. WPIC 35.50 cmt. at 167 (Unlawful use of force) ("if there is a claim of self defense or other lawful use of force, the instruction on that defense will define the term 'lawful'").

The inclusion of the phrase "with unlawful force" in one definition of assault but not the other does have the potential to be confusing and misleading when looked at in isolation from the other instructions. It is also problematic that the phrase was omitted from the very definition of assault the State was relying on to obtain the conviction. Nevertheless, instructions must be read as a whole. State v. Hutchinson, 135 Wn.2d 863, 885, 959 P.2d 1061 (1998), cert. denied, 525 U.S. 1157 (1999). We agree with the trial court that instruction 14 adequately conveyed to the jury that Thomas could not be found guilty of any crime unless the State proved he acted with unlawful force.

In summary, Thomas is entitled to a new trial due to ineffective assistance of counsel. Our confidence in the result of the trial is undermined by the misleading nature of the definitions of assault contained in instruction 11, though

not by the irregularities in conveying the State's burden to prove absence of self-defense.[2]

Reversed.

WE CONCUR:

Becker, J.

Spearman, C.J.

Lau, J.

---

[2] A short statement of additional grounds for review submitted by Thomas under RAP 10.10 does not provide any other viable basis for appellate scrutiny of the proceedings below.